642 A.2d 448

**Jeffrey A. CATALANO, Appellant at No. 23–93, Appellee at No. 24–93,**

v.

**David M. BUJAK, Appellee at No. 23–93, Appellant at No. 24–93.**

Supreme Court of Pennsylvania.

Argued Sept. 23, 1993.

Decided May 24, 1994.

Reargument Denied July 11, 1994.

Paul J. Malizia, Malizia, Malizia & Geci, P.C., Emporium, for appellant at No. 23 and appellee at No. 24.

John C. Dennison, II, Dennison & Dennison, Brookville, for appellant at No. 24 and appellee at No. 23.

Before NIX, C.J., LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, and MONTEMURO, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an order of Commonwealth Court granting Jeffrey Catalano a new trial as to liability and damages in his tort action against David Bujak, a police officer, for personal injuries.

On December 6, 1986, Bujak, a police officer for Beninger Township, Elk County, stopped the car which Catalano was driving for travelling 89 miles per hour in a 55 mile per hour zone. Bujak asked Catalano to step out of the car, and, because he suspected that Catalano might be intoxicated, administered a field sobriety test. Subsequently, he arrested Catalano for driving under the influence. Catalano pleaded guilty to the speeding charge and to disorderly conduct.

Thereafter, Catalano sued Bujak for alleged negligence, carelessness, recklessness or willfulness in using excessive force in arresting Catalano and causing injury to his wrists.

The circumstances of the arrest were disputed at trial. Catalano testified that Bujak forced him over the hood of his car in order to handcuff him and that he injured his wrists when he extended his arms to break the fall against the hood. Bujak testified that he did not use excessive force in arresting Catalano.

Catalano claimed that he sustained various injuries as a result of Bujak's allegedly violent conduct: he underwent surgery on his wrist; he lost work following the surgery; he was no longer able to perform his job as assistant manager in a supermarket; he was humiliated by the injury; he experienced pain and suffering; and his future earnings were reduced.

Bujak's evidence indicated that although Catalano was taken to a hospital for blood alcohol testing on the night of his arrest, he did not complain to Bujak or to hospital personnel that his wrists were injured; that Catalano could still do his job; and that the injury was caused at work, not by Bujak.

At the close of Catalano's case, the trial court dismissed the allegations of negligence, carelessness and recklessness pursuant to the Governmental Immunity Act, Act of October 5, 1980, P.L. 693, No. 142, 42 Pa.C.S.A. § 8541. The remaining cause of action was for willful misconduct pursuant to 42 Pa.C.S.A. § 8550.

The jury returned a verdict in favor of Catalano and against Bujak in the amount of $1,210.94 for medical expenses and

$332.50 for incidental costs. Catalano filed post-trial motions requesting a new trial only on the issue of damages. The trial court denied the motion.

On appeal, Commonwealth Court reversed the trial court and ordered a new trial on both the issues of liability and damages. 148 Pa.Cmwlth. 269, 611 A.2d 314. The court's rationale was that the verdict was inadequate and inconsistent. The verdict, in pertinent part, was as follows:

## VERDICT

### CONTAINING SPECIFIC QUESTIONS
QUESTION 1:

DO YOU FIND THAT THE DEFENDANT'S CONDUCT WAS WILLFUL?
YES X      NO
If you answer Question 1 "No," return to the Courtroom; your verdict is for the Defendant.

QUESTION 2:
DO YOU FIND THAT THE DEFENDANT'S WILLFUL CONDUCT HARMED THE PLAINTIFF?
YES X      NO
If you answer Question 2 "No," return to the Courtroom; your verdict is for the Defendant.

QUESTION 3:
STATE THE AMOUNT OF DAMAGES, IF ANY, SUSTAINED BY THE PLAINTIFF:

| | | |
|---|---|---:|
| 1. | Medical Expenses | $1,210.94 |
| 2. | Past Lost Earnings and Earning Capacity | $ 0 |
| 3. | Future Loss of Earnings and Earning Capacity | $ 0 |
| 4. | Past Pain and Suffering | $ 0 |
| 5. | Future Pain and Suffering | $ 0 |
| 6. | Embarrassment and Humiliation | $ 0 |
| 7. | Disfigurement | $ 0 |
| 8. | Enjoyment of Life | $ 0 |

9. Incidental Costs . . . . . . . . . . $ 332.50
TOTAL (Add Lines 1
through 9) . . . . . . . . . . . . . . $ 1,543.44

Commonwealth Court's conclusion that the verdict was inadequate and inconsistent was based on the fact that although the jury found that Bujak had willfully caused Catalano's injuries, and although it awarded Catalano all of the medical expenses which resulted from his surgery and medical care, it awarded no damages for lost wages or pain and suffering which he claimed were a direct result of the surgery. Because some injuries, such as surgery, are known to involve pain and suffering, and because as a general proposition, injury victims are entitled to compensation for *all* they lose and suffer as a result of a tortious injury, *Boggavarapu v. Ponist,* 518 Pa. 162, 542 A.2d 516 (1988), the lower court concluded that the verdict was inconsistent and inadequate.

Further, Commonwealth Court determined that a new trial as to liability and damages was required because liability was contested and because liability was inextricably related to the issue of damages. Implicit in this rationale is that the verdict was what is sometimes called a compromise verdict. That is, although the jury believed that the defendant caused the injury, perhaps it was not fully convinced that the defendant was responsible for the totality of the injury, and reduced the damages accordingly.

Commonwealth Court was careful to point out that it did not reach the issue of whether a compromise verdict is permissible on the facts of this case [1], but determined only that the refusal to award any damages, as opposed to a portion of damages for lost earnings or pain and suffering, compelled its conclusion that a new trial must be awarded.

**1.** This court has defined "compromise verdict" as follows:

"A compromise verdict is one where the jury, *in doubt as to defendant's negligence or plaintiff's freedom from contributory negligence,* brings in a verdict for the plaintiff but in a smaller amount than it would have if these questions had been free from doubt."

*Stokan v. Turnbull,* 480 Pa. 71, 78, 389 A.2d 90, 93 (1978) (emphasis in original), (citations omitted).

The majority below also held that "the issue of liability is hotly contested and intertwined with the extent of the damages below." Based on this holding, the majority remanded for a new trial on both liability and damages, reasoning that it is not clear from the verdict the extent to which Bujak caused Catalano's injuries.

Catalano argues that Commonwealth Court exceeded its authority in reversing the trial court's denial of his motion for a new trial "limited to damages alone," and *sua sponte* ordering a new trial on liability and damages; and secondly, that a so-called compromise verdict is not applicable to cases involving intentional torts.

As to Catalano's first point, on post-trial motions, Catalano requested a new trial on the issue of damages only. He made no request for a new trial on the issue of liability. Once Catalano demanded a new trial, the court was required first to address the question of whether a new trial must be granted. Only if that question is answered in the affirmative, need the court address the scope of the new trial.

If the court determined that a new trial must be granted, then the law governing the scope of new trials, not the parties' requests, would govern. The real question, then, is not whether the court had the power to award a new trial sua sponte, but whether the grant of a new trial on both liability and damages violated the law applicable to such requests.

In *Tulewicz v. Southeastern Pennsylvania Transportation Authority*, 529 Pa. 584, 606 A.2d 425 (1991), we stated:

In passing upon the sufficiency of a verdict, we have necessarily relied heavily upon the findings of the trial court:

"It is the duty of the lower Court to control the amount of the verdict; it is in possession of all the facts as well as the atmosphere of the case, which will enable it to do more evenhanded justice between the parties than can an appellate court."

*Bochar v. J.B. Martin Motors, Inc.*, 374 Pa. 240, 241, 97 A.2d 813, 814 (1953).

We have given guidance and absent abuse of discretion trust to the appraisal of the trial court.

> The Court is not warranted in setting aside, reducing, or modifying verdicts for personal injuries unless unfairness, mistake, partiality, prejudice, or corruption is shown, or the damages appear to be grossly exorbitant. The verdict must be clearly and immoderately excessive to justify the granting of a new trial. The amount must not only be greater than that which the Court would have awarded, but so excessive as to offend the conscience and judgment of the Court.

*Stark v. Lehigh Foundries,* 388 Pa. 1, 23, 130 A.2d 123, 135 (1957).

*Id.,* 529 Pa. at 586, 606 A.2d at 426.

As to whether Commonwealth Court was within these guidelines, we must first consider the court's rationale for remanding. The rationale was that the verdict was inconsistent and inadequate. We disagree. It would appear that the jury simply disbelieved evidence of damages in excess of what it awarded. It is not for any reviewing court to dictate what evidence a jury must believe.[2]

In this case, the jury apparently did not believe that pain and suffering, for example, or missed work, resulted from the injury which Bujak caused. It did believe that medical and incidental expenses were incurred as a result of the injury, and it awarded damages for those claims. The jury made its determinations, and it is not for this court, absent evidence of unfairness, mistake, partiality, prejudice, corruption, exorbitance, excessiveness, or a result that is offensive to the conscience and judgment of the court, to disturb them.

Order of Commonwealth Court is vacated. The verdict in

---

2. We need not reach the question of whether the case should be remanded for a new trial on damages only or on damages and liability together, for the initial inquiry, whether the case should be remanded at all, has been answered in the negative. See *Gagliano v. Ditzler,* 437 Pa. 230, 263 A.2d 319 (1970).

162

favor of Catalano in the amount of $1,543.44 is reinstated.[3]

LARSEN, J., did not participate in the decision of this case.

MONTEMURO, J., was an appointed Justice of the Court at the time of argument.*

---

**3.** Because of the disposition of this case, we do not address Catalano's claim that a so-called compromise verdict is inapplicable to cases involving intentional torts.

* Senior Justice Montemuro is sitting by designation as senior justice pursuant to Judicial Assignment Docket No. 94 R1800 due to the unavailability of Justice Larsen; see No. 127 Judicial Administration Docket No. 1, filed October 28, 1993.