Patricia ZEIGLER, Appellee,

v.

**Roderick DETWEILER & Flower Shop of Hummelstown, Appellants.**

Superior Court of Pennsylvania.

Argued June 23, 2003.
Filed Oct. 28, 2003.

Richard H. Wix, Harrisburg, for appellants.

Timothy A. Shollenberger, Harrisburg, for appellee.

Before: DEL SOLE, P.J., JOHNSON, HUDOCK, MUSMANNO, LALLY-GREEN, KLEIN, BENDER, BOWES and GRACI, JJ.

DEL SOLE, P.J.

¶ 1 This is an appeal from a trial court order granting a motion for a new trial limited to the issue of general damages.[1] Appellee sought damages for injuries she alleged she sustained in an automobile accident. The jury returned a verdict for Appellee on the issue of negligence and found that Appellants' negligence was a substantial factor in causing Appellee's injuries. In answer to a special interrogatory the jury awarded Appellee her medical expenses, but made no award for pain and suffering. The trial court later granted Appellee's request for a new trial on damages. We affirm.

¶ 2 The underlying action was initiated by Appellee following an automobile accident between the vehicle she was driving and a delivery van driven by Appellant-Detweiler[2] in the course of his employment with Appellant-Flower Shop of Hummelstown. The two vehicles were stopped at a red traffic light headed in opposite directions. When the light turned green Appellant made a left hand turn across the intersection and in front of Appellee, resulting in a collision. Appellee claimed that as a result of the collision she suffered injuries which required her to undergo a course of treatment that included epidural injections and back surgery. Appellee's experts at trial testified that the accident aggravated Appellee's spinal stenosis and degenerative disc disease, necessitating her later surgery. Appellants' experts did not concede that the Appellee had sustained an injury or aggravation of any existing conditions as a result of the accident. They opined that the natural advancement of her previous condition necessitated the later surgery.

¶ 3 The jury found that Appellants were negligent and that this negligence was a substantial factor in causing Appellee's injury. The jury was asked two separate questions regarding damages. It was asked to set a figure for damages for "Past & Future medical/prescription expenses," and fixed that number at $5,222.14. It was asked separately to set an amount for "Past, Present & Future pain and suffering, loss of life's activities, enjoyment of

---

1.  This appeal was initially heard by a panel of this Court, but is now before this *en banc* panel after grant of a petition for reargument.

2.  Appellant, singular, shall refer to the individual Appellant-Roderick Detweiler.

life, emotional distress, embarrassment and humiliation," and fixed that value at zero. Appellants filed post-trial motions which the trial court granted, awarding a new trial limited to the issue of general damages.

¶ 4 On appeal, Appellants set forth three issues:

1.) Did the Lower court commit an error of law and abuse its discretion in over turning [sic] the jury's verdict awarding zero dollars for pain and suffering where the Defendants had disputed liability and also disputed the issue of whether Plaintiff sustained any injury, and the jury had been instructed that they could return a compromise verdict?

2.) Did the Plaintiff waive her right to complain of error when Plaintiff failed to take a specific exception to the Court's charge that the jury could return a compromise verdict?

3.) Did the Lower court commit an error of law and abuse its discretion in awarding a new trial limited to the issue of general damages?

Appellants' Brief at 3.

¶ 5 Trial courts have broad discretion to grant or deny a new trial. *Harman ex rel. Harman v. Borah*, 562 Pa. 455, 756 A.2d 1116, 1121 (2000). "[W]hen analyzing a decision by a trial court to grant or deny a new trial, the proper standard of review, ultimately, is whether the trial court abused its discretion." *Id.* at 1121. Absent a clear abuse of discretion by the trial court, an appellate court must not interfere with the trial court's authority to grant or deny a new trial. *Id.* at 1122. When determining whether the trial court abused its discretion, the appellate court must confine itself to the specific reasons given by the trial court for its ruling. *Id.* An appellate court may reverse the trial court's decision only if it

finds no basis on the record to support the reasons offered by the trial court. *Id.* at 1123. If support for the decision of the trial court is found in the record, the order must be affirmed. *Commonwealth ex rel. Meyers v. Stern*, 509 Pa. 260, 501 A.2d 1380, 1382 (1985). "An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." *Harman*, 756 A.2d at 1123. An abuse of discretion will not be found where an appellate court simply concludes that it would have reached a different result than the trial court. *Id.* If the record adequately supports the trial court's reasons and factual basis, an appellate court may not conclude the court abused its discretion. *Id.*

¶ 6 Appellants first challenge the trial court's ruling awarding a new trial. They claim that a new trial was not warranted in this case where they had disputed liability and had questioned whether Appellee had sustained any injury. In support of their position Appellants cite to *Davis v. Mullen*, 565 Pa. 386, 773 A.2d 764 (2001), where the Supreme Court upheld a trial court's refusal to disturb a jury verdict which awarded the plaintiff medical expenses but no compensation for pain and suffering.

¶ 7 In *Davis*, the plaintiff claimed he had sustained injures after a head-on collision with another vehicle. A jury awarded the plaintiff medical expenses, but nothing for pain and suffering. The plaintiff filed a post-trial motion seeking a new trial, which the trial court denied. The Superior Court reversed the trial court and ordered a new trial. Upon review by the Supreme Court, the Superior Court's decision was reversed, with the Court concluding that the trial court properly exercised its discretion when it denied the motion for new

trial. The Supreme Court specifically rejected the Superior Court's application of a *per se* rule precluding a jury from awarding medical expenses without damages for pain and suffering.

¶ 8 The Court in *Davis* held that:

[A] jury's award of medical expenses without compensation for pain and suffering should not be disturbed where the trial court had a reasonable basis to believe that: (1) the jury did not believe the plaintiff suffered any pain and suffering, or (2) that a preexisting condition or injury was the sole cause of the alleged pain and suffering.

*Id.* at 767.

¶ 9 The Supreme Court also cautioned trial courts to explain why they believe a jury's verdict was unjust if awarding a new trial. *Id.* at 768. This explanation can aid an appellate court's review which must recognize that "the responsibility for controlling the amount of a verdict is vested with the trial court, which is in a better position than an appellate court to assess the facts in the context of the atmosphere surrounding the case and thereby to ensure justice." *K.H. & D.A.H. v. J.R. & N.R.*, 573 Pa. 481, 826 A.2d 863, 875 (2003) citing *Davis v. Mullen*, 565 Pa. 386, 773 A.2d 764.

¶ 10 The trial court in the instant case did provide the reasons for its decision.[3] It recognized that the issue at trial was whether Appellant's conduct in causing the accident aggravated Appellee's preexisting condition in her back. The trial court specifically found that it was unreasonable for the jury to believe that Appellee "did not experience any pain and suffering, or that her preexisting injury was the sole cause of her alleged pain and suffering." Trial Court Opinion, 4/11/02, at 3. Further, it recounted the facts which caused it to reach its conclusion:

The facts reveal that [Appellee] left work early on the day of the accident due to pain, and missed work on several occasions following the accident. [Appellee] testified that her pain caused her to miss work, despite the fact that all she was expected to do was sit in a conference room and watch movies. Following a lay off from that employment and surgery on May 22, 1998, [Appellee] took an even less strenuous position in hopes of reducing her pain.

Furthermore, as pointed out by the [Appellee], she sought medical attention a mere three (3) days following the accident, treatment was sought from several doctors thereafter, with regularity, and, she received chiropractic treatments and pain injections for an extended period of time. Moreover, the record reflects that [Appellee] will, most likely, need to limit her activity in the future regarding bending activities and lifting or carrying objects.

*Id.* at 4. The trial court remarked that "it is difficult for this Court to fathom that the [Appellee's] sudden need for medical care, in varying forms and degrees, was merely coincidental." *Id.* at 5.

¶ 11 The record supports the trial court's reasoning and the factual basis for its conclusion. There is no question in this case that the jury awarded nothing for pain and suffering. The interrogatory did not ask the jury merely to value damages. Rather there were separate questions for

---

**3.** The original record filed with this Court on October 30, 2001 did not include the trial court opinion. That opinion was filed on April 12, 2002 but not forwarded to this Court. Appellee attached a time-stamped copy of the opinion to her Motion for Reargument. Pa.R.A.P.1926 permits such an omission to be corrected. Therefore, we will consider the time-stamped opinion as part of the record on appeal.

(a) medical expenses and (b) damages for pain and suffering.[4] The trial court in this instance did not abide by any *per se* rule in finding that it was improper for the jury to fail to award damages for pain and suffering where it had found the defendant responsible for injuring the plaintiff. Rather, the court detailed its specific reasoning for finding the jury's award inappropriate. Based upon the testimony offered at trial, the trial court concluded that the nature, extent and duration of Appellee's pain and suffering were not due solely to a preexisting injury. It likewise found it was "simply not reasonable for the jury to conclude that the Plaintiff experienced no pain and suffering" for which she must be compensated, particularly since the jury found all of Appellee's claimed medical expenses were caused by the accident. *Id.* Thus, finding support in the record for the trial court's ruling, there was no abuse of discretion in determining that a new trial on the issue of damages was required.

¶ 12 Appellants further claim as part of their first issue that the award was part of a compromise verdict. In their second issue they suggest that Appellee waived her right to complain of any error in the verdict when she failed to take exception to the jury charge which permitted the jury to return a compromise verdict.

■ ¶ 13 Based upon our reading of the court's charge to the jury we find that the charge was proper; thus no objection was warranted. The court's inclusion of the term "compromise" related to the question of medical causation. The jury was instructed:

Now that you've heard the whole situation. And the main contention, of course, from the Plaintiff is that but for this accident she would have not needed this surgery which visited upon her, as you heard all of these consequences, etc., etc.

Now, you need to make a determination in the nub of it whether or not you believe that's what pushed it over into that direction, or whether or not her preexisting condition just degenerated on its own to the point and that was a coincidence in time, or some **compromise** on both of those positions as you, the jury, see it.

Now, if you find that [Plaintiff's] injuries and what flowed from it would have resulted regardless of the manner in which the Defendant, Mr. Detweiler, conducted himself or that the Plaintiff, Ms. Zeigler's injury resulted from other causes, then you may find that there is no causal relationship between the accident and Ms. Zeigler's injury. And if that should be the case, then you should render a verdict in favor of the Defendants since, of course, in that kind of a setting their conduct would not have been the legal cause of Patricia Zeigler's injury.

However, if you find that Patricia Zeigler's injuries would not have been sustained or that aggravation of her condition would not have occurred, which then set the rest of those things into motion that you've heard about then—excuse me—would not have been sustained had the Defendants not acted in a negligent manner, then you should find in favor of the Plaintiff, Patricia Zeigler.

Now, if you find that the Defendants are liable to the Plaintiff, you must then make a determination as to the amount of money damages which you believe will fairly and adequately compensate the Plaintiff for all physical and all emotional injuries which she has sustained in this case.

---

4. *Compare, Kaufman v. Campos,* 827 A.2d 1209 (Pa.Super.2003).

The amount that you would award in such a matter must compensate the Plaintiff completely for the damages sustained in the past, as well as any damages that you might find she would sustain into the future, if any.

N.T., 1/22–26/01, at 153.

¶ 14 Reading this entire portion of the jury charge, not simply the word "compromise," it is clear that the trial court was instructing the jury to first determine causation. They were asked to decide if Appellant's conduct caused Appellee injury or whether her condition at the time of the accident was solely responsible for her later need for treatment. They jury was also asked to consider whether some "compromise" of these two positions existed. They were to consider the degree to which her preexisting condition caused the need for later treatment, and/or the degree to which Appellants' conduct may have aggravated Appellee's condition. If the jury found Appellee established her claim for causation, the jury was advised to fully compensate her for all her injuries. The trial court did not instruct the jury or imply that it was permissible for it to award Appellee one element of damages, yet exclude another as a compromise. Appellants have misread the charge in this regard. Therefore, no objection to the charge was warranted. The verdict rendered by the jury, which found Appellants' negligence was a substantial factor in causing Appellee's harm so as to award her medical expenses, could not be deemed a "compromise" verdict in accordance with the charge given.

¶ 15 In their final issue, Appellants claim that "assuming arguendo" that Appellee is entitled to a new trial, it should not be limited to damages and the question of both liability and causation should again be presented to a jury. Appellants' Brief at 18. Appellants make this claim in a single paragraph argument without any supporting reference to the facts of this case or to relevant law in support of their position. We decline to review such an undeveloped claim.

¶ 16 Order affirmed.

¶ 17 HUDOCK, J. files a Dissenting Opinion in which LALLY–GREEN, BENDER and BOWES, JJ. join.

HUDOCK, J., Dissenting.

¶ 1 Because I disagree with the majority's analysis and conclusion that the jury's award of medical expenses without compensation for pain and suffering was improper, I respectfully dissent. I believe that the jury's award is consistent with the evidence presented at trial and in accord with our Supreme Court's decision in *Davis v. Mullen*, 565 Pa. 386, 773 A.2d 764 (2001).[5]

¶ 2 In *Davis*, Jeffrey Mullen fell asleep behind the wheel of his Ford Tempo and crossed the line dividing the two-way road he was traveling upon, colliding head-on with Jody Davis' fully loaded tractor-trailer. The tractor-trailer traveled up an embankment and turned onto its right side. An ambulance took Davis to a local hospital where he was treated and released with a prescription for pain medication. Davis testified at trial that he was in pain over the weekend, but returned to his normal work schedule the following Monday, which consisted of ten hours a day, five to seven days a week. Twenty days later, Davis began treatment with Dr. Scott Owens, a chiropractor, complaining of neck

5. *Davis* was decided after trial in the present case but before the court's decision to grant a new trial limited to damages.

and low-back pain and a tingling feeling in his left leg. Dr. Owens diagnosed Davis with a muscle spasm and misalignment of the cervical spine. After twenty treatments with Dr. Owens, Davis discontinued treatment.

¶ 3 Subsequently, Davis sued Mullen for damages arising out of the accident. At trial, Mullen admitted liability for the accident but disputed the extent of Davis' injury. Dr. Owens testified that he could not say for certain if the spinal injury was related to the accident at issue or one of the three prior automobile accidents in which Davis had been involved. Davis denied that the other accidents had caused his injuries.

¶ 4 The jury awarded Davis compensation only for his medical expenses and payment for the personal property that was damaged. As a result, Davis requested a new trial, claiming the damages were grossly inadequate because the jury did not compensate him for pain and suffering. The trial court denied the motion. On appeal, we reversed finding the damage award inconsistent with the evidence and remanded for a new trial. Our Supreme Court reversed this Court's ruling, holding that "a jury's award of medical expenses without compensation for pain and suffering should not be disturbed where the trial court had a reasonable basis to believe that: (1) the jury did not believe the plaintiff suffered any pain and suffering, or (2) that a preexisting condition or injury was the sole cause of the alleged pain and suffering." Davis, 565 Pa. at 391, 773 A.2d at 767. The Supreme Court agreed with the trial court's assessment that the following evidence provided a reasonable basis for the jury to believe that Davis did not suffer pain and/or that his alleged injury was preexisting:

> [Davis] did not miss any work as a result of the accident; he waited twenty days after the accident before visiting a doctor; he quit treatment after only twenty visits with the doctor; ... he has not received any medical treatment for the injuries he claims to have suffered as a result of the accident since July of 1995 [and his] doctor also admitted that he could not say for certain if the spinal injury was related to the accident or whether it was caused by some other event.

Id., 565 Pa. at 396–97, 773 A.2d at 770.

¶ 5 Following Davis, the Supreme Court has, on more than one occasion, vacated our decisions which upset jury verdicts that award expenses associated with the injury but declined to award damages for pain and suffering. The Court remanded those appeals for reconsideration in light of the standard articulated in Davis. See e.g., McDermott v. Consolidated Rail Corp., 567 Pa. 561, 789 A.2d 203 (2001); Closky v. U.S. Airways, Inc., 567 Pa. 70, 785 A.2d 491 (2001). In McDermott, a jury awarded Shaun McDermott $12,729.00 for lost wages but did not award damages for pain and suffering in an action filed by McDermott against his employer Consolidated Rail Corp. for negligently failing to provide safe working conditions that allegedly caused him to develop carpal tunnel syndrome and required surgery on both of his hands. At trial, the parties disputed causation. They presented several physicians and occupational health experts who testified as to whether or not McDermott's work caused the carpal tunnel syndrome. Following entry of judgment on the verdict, McDermott filed a post-trial motion requesting a new trial on the issue of damages. The trial court denied the motion and, on appeal, this Court reversed. See McDermott v. Consolidated Rail Corp., 768 A.2d 348 (Pa.Super.2001). We reasoned "[s]ince carpal tunnel syndrome is an injury to the nerves

in the wrist and since [McDermott] underwent two surgeries, he inevitably experienced compensable pain and suffering." *Id.* at 351. Thus, we concluded that "the existing damage award [was] both inadequate to compensate [McDermott] and inconsistent with the finding that [Consolidated Rail Corp.] caused [McDermott's] carpal tunnel syndrome." *Id.* at 351–52. Thereafter, our Supreme Court vacated our decision and remanded the matter for reconsideration in light of the Court's decision in *Davis. McDermott, supra.*

¶ 6 In *Closky,* while a passenger on a USAir airplane, Kevin Closky was struck in the right knee with a beverage cart which was being pushed down the aisle by a flight attendant. Three days after the incident, Closky sought treatment at an emergency room. Thereafter, he was treated by orthopedic surgeons and various other physicians. Closky subsequently underwent two arthroscopic surgeries and an open knee surgery. Closky filed suit against USAir seeking damages for his injury. USAir conceded liability, but disputed the extent and severity of Closky's injury. USAir proceeded on the theory that Closky merely suffered a bump and a bruise as a result of the incident and not a serious injury. The parties provided numerous medical experts disputing causation and the severity of the injury. Following trial, the jury returned an award of damages of $3,584.88, which was equivalent to the medical expenses incurred by Closky during his treatment, beginning with his emergency room visit through treatment with his first two doctors. Closky filed a motion for post-trial relief challenging the adequacy of the verdict due to the jury's failure to award damages for pain and suffering, and the trial court awarded a new trial limited to the issue of damages. On appeal, we affirmed the trial court's grant of a new trial on damages. *Closky v. USAirways, Inc.,* 778 A.2d 730 (Pa.Super.2001) (unpublished memorandum). Our Supreme Court granted USAirways petition for allowance of appeal and vacated our order, directing this Court to reconsider its decision based on the standard set forth in *Davis. See Closky, supra.*

¶ 7 Similarly, I believe that the holding in *Davis* controls the present appeal. Here contradictory testimony was presented as to the severity of the impact. Zeigler testified that as she approached the intersection she did not decelerate because her light was green. She further stated that, upon impact, her body hit the steering wheel and her head hit something in the interior of her vehicle. Conversely, Detweiler testified that the impact was a mere bump, and at first he thought a stone had hit the van he was driving. At the time of the accident, Detweiler was in the process of delivering flowers to local churches. He stated that the bump was so minimal that the flower arrangements remained in an upright position. Zeigler's own witness, Mr. David Mohl, testified that Zeigler was stopped at the light at the intersection and, at the time of impact, neither vehicle was "going fast at all." N.T., 1/24/01, at 19. Contradictory evidence likewise was presented as to whether Zeigler had sustained any injury as a result of the accident. Zeigler's doctors testified that the accident aggravated Zeigler's degenerative disc disease and spinal stenosis and necessitated back surgery, while Detweiler's doctors opined that there was no cause and effect relationship between the accident and any injury alleged and that the surgery was solely attributed to the natural advancement of her pre-existing spinal stenosis and degenerative disc disease. Testimony at trial also revealed that the police were not called to the accident, the vehicles were able to be driven by the parties following the acci-

dent, and Zeigler advised both Detweiler and Mr. Mohl that she was fine immediately following the accident. Additionally, Zeigler was not treated for any alleged injuries until four days later during a visit with her family physician, Frank DeLeo, M.D., a visit which had been scheduled prior to the accident. Testimony by Zeigler further revealed that she had treated with Dr. DeLeo in October 1991 and again, in August 1997, only three months prior to the accident, for back problems. Presented with this evidence, the jury, as factfinder, could have found that Detweiler's negligence caused an injury but that the injury caused was not compensable or that a pre-existing condition or injury was the sole cause of the alleged pain and suffering. Thus, the trial court overstepped its authority by effectively substituting its judgment for that of the jury with respect to the weight to be accorded the evidence. Consequently, I believe that the trial court abused its discretion in awarding a new trial on damages and, as such, would reinstate the jury's verdict.