**Alt v. Franceski**

242

C.P. of Lackawanna County, no. 02-CIV-5474.

*John R. Lenahan Jr.,* for plaintiffs.
*Kevin M. Conaboy,* for defendant.

CORBETT, *J.,* September 29, 2004—And now, after consideration of the defendant's motion for post-trial relief, the plaintiffs' answer, the briefs of both parties and

oral argument, it is the decision of this court that the motion for post-trial relief is denied for the reasons set forth herein:

## I. BRIEF FACTS

Trial in this matter began on January 6, 2004, and concluded two days later on January 8, 2004, with a verdict in favor of the plaintiffs. The jury awarded a total of $154,000, $137,000 to Rosemary Alt and $17,000 to Arthur Alt. The jury awarded damages to Rosemary Alt for pain and suffering in the amount of $6,850 (past), $0 (present) and $27,000 (future). The jury also awarded her damages for emotional distress, past and future, loss of life's pleasures, past and future, and loss of household services, past and future.

Defendant filed a timely motion for post-trial relief and on May 14, 2004, he filed his brief in support thereof. Defendant raises the following nine issues:

(a) whether it was error or abuse of discretion to grant a motion in limine finding injuries sustained by plaintiff were compensable;

(b) whether it was error and abuse of discretion to instruct the jury that it must award some amount of damages;

(c) whether it was error to preclude certain photographs or make their admission contingent upon plaintiffs' admission of evidence regarding force of impact;

(d) whether it was error to preclude defendant from testifying in his own defense or making it contingent upon plaintiffs' admission of evidence regarding the force of the impact or mechanism of injury;

(e) whether it was error or abuse to allow plaintiffs' medical expert to testify;

(f) whether it was error or abuse to allow admission of evidence which depicted an artist's rendition of the plaintiff's post-impact spine;

(g) whether it was error and abuse to allow expert testimony on the value of household services;

(h) whether it was error and abuse to allow plaintiff to testify that she never sued anyone before; and

(i) whether it was error and abuse to allow plaintiffs' counsel to discuss and argue during closing argument an injury sustained by plaintiffs' counsel.

Oral argument on the plaintiffs' motion was conducted on July 1, 2004. After an attempt at settlement, this matter is now ripe for decision.

## II. DISCUSSION

Whether to grant a new trial is within the sound discretion of the trial court. *Mano v. Madden,* 738 A.2d 493 (Pa. Super. 1999). The appellate court will not disturb the trial court's decision unless there is a clear abuse of discretion or an error of law. *Id.* at 495. "An abuse of discretion is not merely an error in judgment; rather it occurs when the law is overridden or misapplied, or when the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill will." *Majczyk v. Oesch,* 789 A.2d 717, 720 (Pa. Super. 2001), quoting *Pilon v. Bally Engineering Structures,* 435 Pa. Super. 227, 233, 645 A.2d 282, 285 (1994). (additional cites omitted)

### A. *Whether It Was Error or Abuse of Discretion To Grant Plaintiffs' Motion in Limine Finding Injuries Sustained by Plaintiff Were Compensable*

### B. *Whether It Was Error or Abuse of Discretion To Instruct the Jury That It Must Award Some Amount of Damages*

While the defendant admits he conceded he was negligent and that his negligence caused the injury, he argues that he never conceded that his conduct was the cause of the plaintiff's "complaints at trial." Defendant recognizes that his medical expert witness diagnosed that plaintiff sustained a "cervical and lumbar strain from the motor vehicle accident." Defendant points out, however, that his expert's testimony did not correlate the plaintiff's complaints of pain to an objective finding. Defendant claims his expert did not testify that the plaintiff suffered any pain that could be attributable to the accident, therefore, a jury is permitted to find that the injury is not compensable even though his negligence did cause some injury.

Defendant argues it was error and an abuse of this court's discretion to grant plaintiffs' motion in limine finding that the injuries sustained by the plaintiff were compensable. Defendant argues that by granting the motion in limine, the jury was prohibited from determining if the injury was one which was compensable, or just a "rub of life."

Defendant maintains it is for a jury to determine if an injury is compensable even when one concedes his negligence caused some injury. Defendant argues that the

jury could have found that the plaintiff's complaints were due to injuries and conditions other than the accident. He claims the jury could have found that the injuries were insignificant as well. Defendant claims that based upon the ruling in *Majczyk v. Oesch,* 789 A.2d 717 (Pa. Super. 2001), it was inappropriate to instruct the jury that it had to award damages.

Plaintiffs could not disagree more with this argument. They claim that when the defendant's expert's evidence shows that the plaintiff was injured in a vehicle accident as a result of the defendant's negligence, the question of causation is uncontroverted. In such cases, plaintiffs maintain the jury cannot find that the defendant's negligence was not a substantial factor in bringing about the injury. Plaintiffs claim that under Pennsylvania law if an injury is sustained as a result of defendant's negligence, damages must be awarded.

In *Majczyk v. Oesch,* 789 A.2d 717 (Pa. Super. 2001), the court addressed whether it was appropriate for a jury to find in favor of a defendant despite "obvious negligence because it does not believe that plaintiff's pain and suffering . . . are compensable."[1] *Id.* at 721. In *Majczyk* the plaintiff claimed that the defendant's vehicle bumped the plaintiff's vehicle after he eased his foot off the brake when a red light changed to green. The defendant's vehicle drifted forward at less than five miles per hour and struck the rear of the plaintiff's vehicle. The plaintiff claimed that as a result of the accident, she suffered a herniated disk and was forced to undergo sur-

---

1. The court certified the case for en banc review to address this issue.

gery. Plaintiff also claimed she was unable to work, unable to do housework, and could not engage in any activities with her children. The jury found against the plaintiff and for the defendant.

After the verdict, the plaintiff in *Majczyk, supra,* filed a motion for a new trial claiming, among other things, that the verdict was contrary to the evidence presented. The plaintiff argued that since two of the defendant's experts "conceded" injury from the accident, awarding no damages was contrary to the evidence. The trial court denied a new trial and the appellate court affirmed.

The appellate court pointed out that the plaintiff in *Majczyk* was seeking to recover compensation for "her ongoing pain and suffering from a herniated disk, not for a few days or weeks of discomfort." *Majczyk,* 789 A.2d at 721. She was seeking recovery for a serious injury and the ongoing pain and suffering from those serious injuries.

The court disagreed with plaintiff's contention that the defendant's medical experts conceded her injuries. *Id.* at 721. One of the defendant's experts in that case testified that her complaints just days after the accident were different than those reported eight months after the accident. The second expert concluded that the plaintiff's injuries were not consistent with a disk herniation. *Id.* at 725. In fact, the second expert testified that "while [plaintiff] had some subjective symptoms in the form of sore muscles after the accident, these symptoms had resolved within three weeks of the accident." *Id.*[2] The record

2. It was based upon this testimony that the appellate court ruled that "while the jury may have concluded that appellant suffered some

showed that the defendant's expert did not concede the injury and, in fact, at least one of the experts indicated that the plaintiff only suffered from soreness after the accident. Since the defendant's expert did not concede injury, the Superior Court found no abuse of discretion by the trial court in refusing to grant a new trial.

In several cases after *Majczyk, supra,* the Superior Court clarified its opinion in that case. In a footnote in *Smith v. Putter,* 832 A.2d 1094 (Pa. Super. 2003), the court wrote that while a jury can find that a plaintiff's injury is a mere rub of life, the "jury is not free to find no causation where the defense expert concedes as much." *Id.* at 1098 n.1. In *Smith, supra,* the defense expert conceded that the "*aggravation of [the plaintiff's] hip condition was caused by the accident* in question." *Id.* at 1099. (emphasis in original) Since both the plaintiff and defendant's medical experts agreed that the accident "caused some injury, [the court said] the jury was not free to disregard this evidence." *Id.*

In *Hyang v. Lynde,* 820 A.2d 753, 754 (Pa. Super. 2003), the jury found that the "accident was not a substantial contributing factor" to plaintiff's injuries and the trial court granted a new trial. The appellate court affirmed. It found that the defendant's medical expert conceded that the plaintiff suffered "neck and back strain from the accident that lasted approximately six weeks." *Id.* at 754. The court affirmed the granting of a new trial

---

painful inconvenience for a few days or weeks after the accident, it may also have concluded that appellant's discomfort was the sort of transient rub of life for which compensation is not warranted." *Majczyk,* 789 A.2d at 726.

in order to provide "compensation for [the] neck and back strain." *Id.*

In *Hyang, supra,* the defendant argued that "it was well within the jury's province to disbelieve . . . the plaintiff's doctors . . . ." Defendant argued that awarding a new trial forces the assumption that the jury would find the plaintiff and her doctors credible. *Id.* at 755. He also claimed the jury was justified in believing that plaintiff was merely "puffing" her injuries and that her doctors "were just saying what needed to be said . . . ." *Id.* The court pointed out, however, that the defendant's own expert conceded the injury. The expert testified that the plaintiff "sprained her neck and back." *Hyang,* 820 A.2d at 755. The court said that because the defendant conceded these minor injuries, "the jury must at least award damages for the uncontroverted limited pain from the sprain and strain." *Id.* at 756. It granted a new trial to address the issue of damages on these minor injuries.

The decision in *Hyang, supra,* is supported by the Supreme Court's ruling in *Neison v. Hines,* 539 Pa. 516, 653 A.2d 634 (1995). In *Neison,* the Supreme Court stated:

"[I]t is within the province of the jury to assess the worth of testimony, which it may then accept or reject. We agree that the jury is free to believe all, some or none of the testimony presented by a witness. However, this rule is tempered by the requirement that the verdict must not be a product of passion, prejudice, partiality, or corruption, or must bear some reasonable relation to the loss suffered by the evidenced [sic] as demonstrated by uncontroverted evidence presented at trial. The synthesis of these conflicting rules is that a jury is entitled to reject

any and all evidence up until the point at which the verdict is so disproportionate to the uncontested evidence as to defy common sense and logic." *Hyang,* 820 A.2d at 756-57, citing *Neison,* 539 Pa. at 520-21, 653 A.2d at 636-37. (citations omitted)

Importantly, the court in *Majczyk, supra,* pointed out that the defendant's experts claimed the plaintiff suffered "subjective pain." In *Boggavarapu v. Ponist,* 518 Pa. 162, 542 A.2d 516 (1988), the Pennsylvania Supreme Court wrote that "there are injures to which human experience teaches there is accompanying pain." *Id.* at 167, 542 A.2d at 518. These injuries include among other things, the stretched muscle, twist of the skeletal system, and "all the consequences of any injury traceable by medical science and common experience as sources of pain and suffering," among other things. *Id.* These objective injuries cannot be ignored. As the Supreme Court pointed out, subjective pain is only compensable if a jury believes and accepts that it actually exists. *Boggavarapu,* 518 Pa. at 167, 542 A.2d at 518.

In this case, unlike *Majczyk, supra,* the plaintiffs suffered injury. The defendant's medical expert diagnosed the plaintiff as having a "cervical and lumbar strain from the motor vehicle accident." [3] (See Dr. Allardyce trans., p. 30, ll. 4-6.) He admitted that the plaintiff suffered "traumatic injury" in the accident. (Allardyce trans., p. 74, ll. 6-10.) During his closing argument, the defendant's counsel admitted the plaintiff suffered a "strain and sprain injury" as a result of the accident. (See trans., 6/8/04, p.

---

3. This is the type of injury which "common experience" tells us is a "source of pain and suffering." *Boggavarapu, supra.*

8.) The defendant's expert also agreed that the plaintiff would need "continued treatment." (See trans. 6/8/04, p. 34.)[4] In fact, the defendant's counsel specifically stated that the plaintiff "should be fairly compensated for only the injuries that she sustained as a result of the October 15, 2001 accident . . . ." (Trans. 6/8/04, p. 34.)

The court's ruling in this case was that damages had to be awarded to the plaintiff. This was a proper ruling since both parties admitted plaintiff's injuries were caused by the accident. Since this was conceded, it would have been an error for the jury to ignore this important point. See *Hyang,* 820 A.2d at 754 ("Because it was conceded that Mrs. Shin suffered neck and back strain from the accident that lasted approximately six weeks, the jury ignored the uncontroverted medical testimony, and the verdict was against the weight of the evidence."); *Boggavarapu,* 518 Pa. at 167, 542 A.2d at 518 (injuries which human experience teaches there is accompanying pain includes "the stretched muscle" and the "twist of the skeletal system," among other things.)[5] Based upon same, it was proper for this court to rule that the plaintiff's injuries were compensable and there is nothing in the Superior Court's ruling in *Majczyk, supra,* which indicates to the contrary.

---

4. The expert maintained the "continued treatment" was noninvasive and mainly consisted of exercise and stretching.

5. The court's ruling was merely that damages had to be awarded for the plaintiff's injuries. The jury could believe the plaintiff's injuries were merely a minor strain or it could have found them to be a more serious sprain. Either way, it was for the jury to determine the appropriate damages. Neither the court's ruling or instruction had any impact on the amount of damages the jury could award.

The defendant's claim that the jury could have found plaintiff's complaints were the result of something else is not correct. As the court has shown, the Superior Court has consistently held that if an injury is caused by the negligence of the defendant and the experts agree, the jury is not "free to disregard this evidence." *Smith v. Putter,* 832 A.2d 1094, 1099 (Pa. Super. 2003). The concession by defendant that the plaintiff's suffered injury, namely a sprained and strained neck and back, requires damages to be awarded for the pain from that injury. (See *Hyang, supra.*) A "stretched muscle" and a "twist of the skeletal system" is the type of injury which has accompanying pain. (See *Boggavarapu, supra.*) The jury "must at least award damages for the uncontroverted limited pain from the sprain and strain." *Hyang,* 820 A.2d at 756.

Moreover, the court finds the defendant's argument regarding damages to be strained. During closing argument, defendant's counsel specifically stated that plaintiff "should be fairly compensated" for the injuries she suffered. This was an apparent attempt to compel the jury to award damages only for the sprained and strained neck and back and nothing more. Now, the defendant claims it was error for the court to instruct the jury that damages must be awarded. He cannot have it both ways. The defendant cannot make the argument that some damages must be awarded during his closing argument when it suits his strategy, but then claim it was error because the court instructs the jury regarding same.

The defendant also objects to a portion of the instruction given to the jury which was read as follows:

"Ladies and gentlemen, I have to make it clear, you must find an amount of money damages you believe will

fairly and adequately compensate the plaintiff for all the physical injuries she has sustained as a result of the accident."

First, it is the opinion of this court that this instruction was proper. The defendant conceded he was negligent and that his negligence caused the accident. The defendant's expert also diagnosed the plaintiff with a "cervical and lumbar strain from the motor vehicle accident" making the question of causation of these injuries uncontroverted. Under the law, the jury was not permitted to disregard this evidence. As indicated, a strained neck and strained back are injuries that are not the type of transient rub of life discussed in *Boggavarapu, supra.*

Even if that were not the case, the instruction being objected to by the defendant was proper. In *Zeigler v. Detweiler,* 835 A.2d 764 (Pa. Super. 2003), plaintiff sued defendants for injuries she claimed she suffered as a result of an accident. Plaintiff's experts testified that the accident aggravated pre-existing injuries. The defendant's expert did not concede any injury or the aggravation of any existing condition. At trial, the defendants' experts argued that the plaintiff's present condition was just the natural advancement of plaintiff's existing condition.

Even though causation was not conceded, the trial court gave the following jury instruction:

"Now, if you find that the defendants are liable to the plaintiff, *you must then make a determination as to the amount of money damages which you believe will fairly and adequately compensate the plaintiff for all physical and all emotional injuries which she has sustained in this case.*

"The amount that you would award in such a matter must compensate the plaintiff completely for the damages sustained in the past, as well as any damages that you might find she would sustain into the future, if any." *Zeigler,* 835 A.2d at 769-70. (emphasis added)

The Superior Court found this charge to be proper. *Id.* at 769.

The instruction given in this case was substantially similar to that in *Zeigler, supra.* The objected to instruction was that the jury "must find an amount of money damages [it] believe[s] will fairly and adequately compensate the plaintiff . . . ." The Superior Court already ruled this language was a "proper," instruction in a case where causation was not conceded, but was in fact vigorously contested. See *Zeigler, supra.* If this instruction is "proper" in a case where causation was emphatically disputed, it is clearly appropriate in a case where causation was conceded and the defendant's expert testified that the plaintiff suffered a "cervical and lumbar strain in the accident." Defendant's argument that he never conceded that plaintiff's injuries resulting from the accident were the cause of her complaints of pain at trial does not change the fact that the instruction was proper.

For the reasons set forth herein, it is the decision of this court that the instruction given to the jury and granting the plaintiffs' motion in limine was proper and defendant's motion regarding same is denied. [6,7]

---

6. Defendant makes the argument that the instruction and the motion in limine prohibited the jury from finding that the injury of the plaintiff was a mere "rub of life" and therefore not compensable. Clearly, since the jury awarded $137,000 in damages in this case to the injured plaintiff, Rosemary Alt, the jury determined the injury was

## C. *Error and Abuse of Discretion To Preclude Evidence of Photographs of the Damage or Lack of Damage to the Vehicle and That It Was Error To Make the Admission of the Photographs Contingent Upon Plaintiff's Admission of Evidence Regarding Force of Impact*

Defendant next argues that he is entitled to a new trial because this court abused its discretion and misapplied the law when it precluded him from producing "any evidence of the severity of the impact." This, he claims, was done by precluding photographs of the vehicle and by not allowing the defendant to give testimony. Defendant claims precluding this evidence prejudiced the defendant since it prevented him from "proving that the [plaintiff's] complaints were not related to this accident."

"Relevance is a threshold consideration in determining the admissibility of evidence." *Henery v. Shadle,* 443 Pa. Super. 331, 340, 661 A.2d 439, 444 (1995). Evidence is relevant if it "tends to establish facts in issue or in some degree advances the inquiry at hand . . . ." *Id.* at 341, 661 A.2d at 444. It is relevant if something is made "more or less probable." *Id.* Trial courts in Pennsylvania "enjoy broad discretion regarding the admissibility of

---

something more than a transient rub of life. Moreover, if defendant's argument was correct regarding the jury instruction, it seems the jury would have issued damages in each category of pain and suffering on the verdict slip. The jury awarded zero damages for present pain and suffering. It is the opinion of this court that the jury's award defeats defendant's argument

7. In the defendant's closing argument he stated, "your job is to decide what you believe is fair compensation to Mr. and Mrs. Alt for the damages that she sustained as a result of the accident." The court's instruction was almost identical.

potentially misleading and confusing evidence." *Henery*, 443 Pa. Super. at 340, 661 A.2d at 444. Trial courts may "exclude evidence if its probative value is . . . outweighed by the danger of unfair prejudice." *Id.* For purposes of this evidentiary rule, "prejudice" is defined as "an undue tendency to suggest a decision on an improper basis." *Id.*

After the trial court decides that evidence is relevant, it must also "balance the probative value of evidence against any prejudicial effect of that evidence." *Henery*, 443 Pa. Super. at 341, 661 A.2d at 444. This balancing is a "particular specialty" of the trial judge. *Id.* For that reason, rulings of admissibility are committed to the sound discretion of the trial court and will not be overturned in the absence of an abuse of discretion. *Id.* at 341, 661 A.2d at 444.

The defendant sought to admit photographs of the vehicles. [8] Defendant claims it was common sense that these photographs were admissible since they show no damage to the vehicle and are relevant evidence as to the plaintiff's alleged injuries. Specifically, defendant claims the photographs of the plaintiffs' vehicle in this case were "relevant, admissible evidence necessary for the jury's verdict on damages."

The photographs were being offered to "indicate that there was no, or minor, damage to the bumper, the rear end vehicle of the plaintiff." (See trial trans., p. 8.) However, prior to trial the defendant conceded that there was damage to the vehicle that was not depicted in the pho-

---

8. This was originally addressed through motion in limine and then again during trial at the end of plaintiffs' case.

tographs. (See trans., p. 8.) This damage was to the undercarriage of the vehicle.

At the time of trial and presently, it is the opinion of this court that the photographs are not relevant because they fail to show the actual damage to the plaintiffs' vehicle.[9] Since the photographs do not show the true damage to the vehicle, it is the opinion of the court that their probative value is outweighed by the unfair prejudice that would result by their admission. The photographs were misleading and, as a result, did not advance inquiry. In fact, by failing to show the undercarriage of the vehicle, the admission of the photographs would have caused confusion because they failed to show the entire picture.

Defendant's argument that it was error to make the admission of the photographs contingent upon plaintiff's admission of evidence regarding force of impact is misleading. In fact, the court ruled that the photographs were not admissible. However, if the plaintiff attempted to admit evidence regarding force of the impact to the rear of her vehicle caused her significant injury, the photographs would be allowed. It is the opinion of this court that this ruling was correct and proper since, as aforementioned, the damage to the vehicle was to the undercarriage, not the rear of the vehicle when impact occurred. If the plaintiff tried to claim differently, then the photographs would be relevant.

---

9. Again, defendant conceded that the photographs did not show the damage to the undercarriage of the vehicle. (See transcript, p. 8.)

For the reasons set forth herein, the defendant's motion as it relates to failure to allow the admission of the photographs is denied.

D. *Whether It Was Error To Preclude Defendant From Testifying in His Own Defense and Making It Contingent Upon Plaintiff's Admission of Evidence Regarding the Force of the Impact or Mechanism of Injury During the Accident in Question*

Evidence is relevant if it tends to prove or disprove a material fact in issue. *Moroney v. General Motors Corp.,* 850 A.2d 629 (Pa. Super. 2004). Evidence is relevant if the inference sought to be raised by it bears on the matter at issue and if the evidence renders the desired inference more probable than it would be without the evidence. *Farine v. PennDOT, Bureau of Motor Vehicles,* 831 A.2d 1266 (Pa. Commw. 2003). A trial court has wide discretion in ruling on the relevancy of evidence and its rulings will not be reversed absent an abuse of discretion. *B.K. v. J.K.,* 823 A.2d 987 (Pa. Super. 2003).

"It is well established that evidence is admissible if [it is] 'relevant to the fact sought to be proved.' " *Koletas v. Pezzotta,* 1996 WL 1358445 (Pa. Com. Pl. 1996), citing *Martin v. Soblotney,* 502 Pa. 418, 466 A.2d 1022 (1983). "Evidence is relevant if it tends to make a fact at issue more or less probable." *Id.* at 204, citing *Martin,* 502 Pa. at 422, 466 A.2d at 1024. "Admitting or excluding evidence is within the discretion of the court." *Id.* A court may "refuse to admit evidence that might 'confuse, mislead or prejudice the jury.' " *Id.* citing *Lewis v. Mellor,* 259 Pa. Super. 509, 515, 393 A.2d 941, 944 (1978).

Defendant claims, as he did above, that his testimony regarding the force of impact was important in evaluating plaintiff's injuries and complaints. He claims this evidence was relevant to the jury's determination of the effect the impact had on Mrs. Alt.

However, as previously stated, the defendant conceded he was negligent. He conceded he was negligent and that his negligence caused plaintiff to suffer injury. Thus, as we have previously shown, the question of causation of injuries is uncontroverted. Since the jury was not permitted to disregard this uncontroverted evidence, the defendant's testimony related to "force of impact in attributing to plaintiff's injuries" is not relevant testimony.

This court granted the plaintiff's motion in limine regarding defendant's testimony because defendant had no "relevant or admissible testimony to provide on the subject of liability or damages . . . ." (See trans., p. 5.) The defendant did not examine the plaintiffs' vehicle, did not speak with Mrs. Alt and apparently did not even know she was in the car. Again, since injury was uncontroverted, defendant's testimony regarding the force of impact "in attributing a plaintiff's injuries" is not relevant.

Defendant's characterization that this court made his testimony contingent upon plaintiff's admission of evidence by plaintiff regarding the force of impact or mechanism of injury during the accident in question is, if not entirely wrong, certainly misleading. After the court excluded the irrelevant testimony of the defendant, the court properly gave a precautionary instruction that if plaintiff opened the door on this subject, defendant would be allowed to admit evidence regarding same. To the extent

the defendant's argument indicates anything to the contrary, he has misinterpreted this court's ruling.

For the reasons set forth, defendant's motion as it relates to preclusion of his testimony is denied.

### E. *Whether It Was Error or Abuse of Discretion To Allow the Testimony of One of Plaintiffs' Medical Experts*

Pennsylvania Rule of Civil Procedure 223(1) states:

"Subject to the requirements of due process of law and of the constitutional rights of the parties, the court may make and enforce rules and orders covering any of the following matters, inter alia:

"(1) Limiting the number of witnesses whose testimony is similar or cumulative; . . . ."

It is within the discretion of the trial court to preclude cumulative evidence. Pennsylvania Rule of Evidence 403; *Unisys Corp. v. Entex Information Services Inc.,* 45 D.&C.4th 405 (2000); see also, *Gustison v. Ted Smith Floor Products Inc.,* 451 Pa. Super. 442, 458, 679 A.2d 1304, 1313 (1996). Evidentiary questions are left to the sound discretion of the trial court, and an appellate court will not disturb the trial court's rulings on evidentiary questions absent an abuse of that discretion. *Morrison v. Commonwealth, Department of Public Welfare, Office of Mental Health,* 538 Pa. 122, 646 A.2d 565 (1994); *Jones v. Prudential Property and Casualty Insurance Co.,* 2004 Pa. Super. 284, 2004 WL 1632689 (2004).

Pennsylvania Rule of Evidence 403 states:

"Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair

prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

In this case, the defendant claims allowing the testimony of plaintiff's two doctors amounted to cumulative testimony which was prejudicial to the defendant. He claims the two doctors basically stated the same thing and it was error to allow both to testify. [10] Specifically, he states that Dr. William Prebola "testified extensively on every aspect of Mrs. Alt's treatment, complaints, future needs for surgery and other treatment; essentially everything contained in Dr. [Michael] D'Ambrosio's report." (See defendant's brief, p. 21.)

Dr. Prebola was the plaintiff's treating physician. An examination of his testimony shows that he did speak extensively on the injuries the plaintiff suffered and the treatment he provided to her. He did not speak extensively on surgery or the need for surgery. In fact, an examination of his direct testimony shows that he only mentioned surgery on two occasions. The first comes when asked about another doctor's failure to "perform nor recommend surgery at the time [Dr. Thompson] had seen her." (See trans., 1/6/04, pp. 85-86.) The next time it is discussed is when he was asked if the plaintiff was a

---

10. Defendant claims he objected to this testimony at trial instead of in motion in limine because he was unaware that Dr. Prebola would provide testimony regarding surgery. He claims Dr. Prebola did not testify about surgery prior to trial. The first time defendant claims he learned Dr. Prebola would offer testimony regarding surgery was during the trial itself. It was only after this testimony was given that defendant claims the cumulative argument arose.

candidate for surgery. (See trans., 1/6/04, p. 157.) [11] Both the questions and answers were very brief.

Dr. D'Ambrosio was accepted as an expert in neurology. After discussion of Dr. D'Ambrosio's qualifications, plaintiffs began their direct testimony of him by stating:

"Doctor, at the outset I want to let you know, because you don't know this, that we have had extensive testimony already today about the patient, Mrs. Alt, and her medical background, so I'm going to ask you not to going [sic] into the same type of detail that I would ordinarily ask you to do because it will be repetitive."

Dr. D'Ambrosio then testified to the pain one would suffer as a result of six herniated discs (see trans., 1/6/04, pp. 251-54); his diagnosis of the patient (see trans., 1/6/04, pp. 254-55, 260-63); why the plaintiff is a surgical candidate, the particular surgery(ies) she is a candidate for and how those surgical procedures are conducted. (See trans., 1/6/04, pp. 255-60.)

At the time of trial and after reviewing the record, it is the opinion of this court that testimony of the two doctors was not cumulative. The plaintiffs made significant efforts to assure that there was little repetition in the two doctors' testimony. While there is a certain amount of overlap, it is the opinion of this court that any overlap was necessary to prevent confusion and/or prevent the testimony from being immediately discredited during cross-examination for not indicating his understanding of the plaintiff's history and treatment. For these rea-

11. It was also briefly addressed three times during cross-examination.

sons, the defendant's motion for a new trial based upon his claim of cumulative testimony is denied.

### F. *Whether It Was Error or an Abuse of Discretion To Allow Admission of Artist's Rendition of Plaintiff's Post-Impact Spine*

"Generally, demonstrative evidence is admissible if its probative value outweighs the likelihood of improperly influencing the jury." *Pascale v. Hechinger Co. of PA,* 426 Pa. Super. 426, 437, 627 A.2d 750, 755 (1993) (citations omitted); *Jackson v. Spagnola,* 349 Pa. Super. 471, 503 A.2d 944 (1986). The conditions of the demonstration must be sufficiently close to those involved in the accident to make the probative value outweigh the likely prejudicial effect. *Pascale,* 426 Pa. Super. at 437, 627 A.2d at 755.

The Pennsylvania Superior Court acknowledged the use of demonstrative evidence, even if not completely accurate, can still be admissible. *Jackson,* 349 Pa. Super. at 476, 503 A.2d at 946-47, citing to *Zurzola v. General Motors Corp.,* 69 F.R.D. 469 (E.D. Pa. 1975) (Video of a reconstructed accident was proper even though plaintiff complained it was inaccurate and prejudicial since it failed to show all the factors involved.). In *Jackson, supra,* the video was not used to try to re-create the accident, but instead was used to show how a specific part of the car (*i.e.,* the seats) operated. The court said the use of the video for that limited purpose was not prejudicial.

In this case, defendant objected to the use of two exhibits. The first exhibit was called "Rosemary Alt, pain management epidural injections." (See trans., 1/6/04, p. 92.) Defendant objected, claiming the exhibit misrepre-

sented the size of the needle used on the plaintiff. He argued that the graph made the needle look much bigger than it was. However, as the plaintiffs properly pointed out, the court had counsel put the needle up to the exhibit to compare the size. In fact, the court was of the opinion that the needle in the exhibit was smaller than the actual needle used on plaintiff.

The second objection was the exhibit labeled "Rosemary Alt post-impact condition of spine." Defendant claimed this violated the best evidence rule.[12] Defendant had no objection to the actual MRI film which was actually on the exhibit. However, it objected to the "herniations in the disc bulge" which he claimed were misrepresentations of what is depicted in the actual MRI. (See trans., 1/6/04, p. 93.) He claimed some or all of the herniation appeared larger and one of the depictions on the exhibits was inaccurate.

The court does not agree that the graphic made the herniations larger or depicted anything inaccurately. The herniations appeared to be equal size with the MRI which was part of the evidence presented. The court allowed the graphics as long as the proper foundation was laid that it would assist the medical expert in his testimony. (See trans., 1/6/04, p. 95.) Moreover, like in *Johnson, supra,* the defendant in this case was aware they would be used, had an opportunity to cross-examine the medical experts on same and had an opportunity to point out

---

12. It was the opinion of the court at trial, and now, that the best evidence rule is inapplicable since the MRI is part of the evidence and depicted in the graphic itself. Here, the graphic was being offered to allow the jury to better understand what damages they claimed. Plaintiff was not and did not offer the graphic in place of the MRI.

any inaccuracies that he believed existed. It is the opinion of this court that the graphics assisted the jury in understanding the arguments being made by both parties. Thus, to the extent that any prejudice existed,[13] the probative value of the exhibits outweighed same. For these reasons, defendant's motion based upon the allowance of these exhibits is denied.

G. *Whether It Was Error and Abuse To Allow Expert Testimony on the Value of Household Services*

"In Pennsylvania, the threshold of expertise necessary to qualify a witness to give expert testimony is relatively modest." *Wexler v. Hecht,* 847 A.2d 95, 105 (Pa. Super. 2004); see also, *Miller v. Brass Rail Tavern Inc.,* 541 Pa. 474, 480-81, 664 A.2d 525, 528 (1995). "The witness must have sufficient skill, knowledge, or expertise in the field at issue 'as to make it appear that his opinion or inference will probably aid the trier [of fact] in his search for truth.'" *Id.,* 847 A.2d at 105, citing *W. Phila. Therapy Ctr. v. Erie Ins. Group,* 751 A.2d 1166, 1168 (Pa. Super. 2000). An expert "need only possess 'more knowledge than is otherwise within the ordinary range of training, knowledge, intelligence or experience' of the average juror." *Id.,* 847 A.2d at 106, quoting *Miller,* 541 Pa. at 481, 664 A.2d at 528. (additional cites omitted)

Pennsylvania courts have allowed and recognized the need for expert testimony for damages related to a party plaintiff's inability to perform household services in the future. *Cotterman v Allstate Insurance Co.,* 446 Pa. Su-

---

13. The court does not agree that any prejudice resulted from the photographs.

per. 202, 666 A.2d 695 (1995). Experts can give their opinion of the value of household services. *Id.* at 213-14, 666 A.2d at 701.[14]

While the defendant maintains the value of household services was within the purview of the jury, he cites no case law which states that an expert cannot testify to household services. Our review of the law on this subject clearly shows that the appellate court has allowed such expert testimony. Even so, it is the opinion of this court that the value of household services is more appropriately determined when viewed by an expert. Household services have forever been overlooked and undervalued.

For some time, society has viewed such services as a woman's work or chores. These titles have come to indicate that this work or service is somehow less important. It is only recently that this work has started to receive the appreciation and understanding that it deserves. That understanding, however, does not necessarily include a value for these services. Generally speaking, only those who have experienced a loss of these services for one reason or another understand the true value of these services.

_____

14. In *Cotterman, supra* at 213, 666 A.2d at 701, the court acknowledged the fact that an "expert testified as to Cotterman's inability to perform household services" and "opined as to the dollar value of such household services." *Cotterman* is cited merely for its acknowledgement that the expert testimony on the value of household services was not deemed improper. While the appellate court was reviewing the decision of the trial court as to an arbitration decision, it clearly acknowledged the use of expert testimony for household services was acceptable.

For this reason, the court disagrees with defendant's argument that the value of household services is within the understanding of the jury. Quite to the contrary, the court believes that an expert is appropriate and oftentimes necessary to provide the jury with the value for household services. Defendant's motion based upon the expert testimony on the value of household services is denied for that reason.

### H. *Whether It Was Error and Abuse To Allow Plaintiff to Testify That She Never Sued Anyone Before*

Evidentiary questions are within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. *Jones v. Prudential Property and Casualty Insurance Co.*, 2004 Pa. Super. 284, 2004 WL 1632689 (2004). Evidence is relevant if it tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact. *Commonwealth v. U.S. Mineral Products Co.*, 2002 WL 31444326 (Pa. Commw. 2002).

During trial, defendant objected to two questions asked of plaintiff: "[h]ave you ever been involved in a lawsuit" and "[h]ave you ever sued anyone before?" To both questions defendant objected. (See trans., 1/7/04, p. 44.) The next and final question asked on direct was why she sued in this instance. (See trans., 1/7/04, p. 44.)

At the time of trial, and now, it was the opinion of the court that this testimony was being offered to show that the injuries in this case were so significant that she felt compelled to do something. It allowed a better under-

standing of the plaintiff's state of mind. The court did not then, nor now believe that it was being offered to show she was somehow "virtuous." For this reason, plaintiff's motion for a new trial based upon the admission of this testimony is denied.[15]

I. *Whether It Was Error and Abuse To Allow Plaintiffs' Counsel to Discuss and Argue During Closing Argument Regarding an Injury Sustained by Plaintiffs' Counsel During a Slip and Fall in New York City*

"While counsel usually has great latitude in his closing argument, he may not present facts [at closing which are] not in evidence and which are prejudicial." *Coffey v. Minwax Co. Inc.,* 764 A.2d 616, 620 (Pa. Super. 2000); *Millen v. Miller,* 224 Pa. Super. 569, 572, 308 A.2d 115, 117 (1973). At closing, counsel should "advance a spirited argument to support his client's cause . . . ." *O'Malley v. Continental Insurance Co.,* 305 Pa. Super. 302, 309, 451 A.2d 542, 546 (1982). This does not mean counsel is allowed to take unwarranted liberties with the evidence or exaggerate accusations. *Id.* at 309, 451 A.2d at 546. Nevertheless, a new trial is not required where the remarks made by counsel in closing arguments are neither inflammatory nor prejudicial. *Mansour v. Linganna,* 787 A.2d 443 (Pa. Super. 2001).

---

15. These two questions came at the very end of a lengthy direct examination. (See trans., 1/7/04, pp. 7-44.) The plaintiff gave one word responses to each. Even if this evidence was not relevant to the plaintiff's state of mind, there is no prejudice to the defendant by allowing same in this instance.

In this case, defendant objected to plaintiffs' counsel's use of a personal experience during closing based upon facts not in evidence. Specifically, counsel objected to plaintiffs' counsel's story about a time when he claims he fell, did not seek immediate treatment and two days later could not even breathe. (See trans., 1/8/04, pp. 51, 52.) The court during trial overruled the objection and defendant now raises the same argument in this motion.

Defendant's objection to the closing based upon facts not in evidence was overruled because, as defendant points out in his brief, the plaintiff testified that she did not immediately go to the doctor and waited to seek treatment to see if she felt better. There was evidence presented regarding this key issue and counsel's use of personal experience was done only to introduce the issue during closing. It is the opinion of this court that such discussion is not beyond the bounds of latitude given to counsel during closing argument.

Even if it were beyond the proper bounds of closing argument, allowing same was not inflammatory nor prejudicial. Plaintiffs' counsel addressed his personal experience only briefly and by no means based his closing on counsel's personal experience. Instead, he simply mentioned it along with numerous other arguments counsel believed supported the theory that waiting to seek medical attention in this case was meaningless (*i.e.,* immediate symptoms (trans. 1/8/04, p. 50); Alt's personal experience (trans. 1/8/04, p. 52); significant findings in first MRI reports taken after accident (see trans., 1/8/04, p. 55), among other things). There was nothing inflammatory nor prejudicial about the plaintiffs' closing argu-

ment and defendant's motion as it relates to same is denied. An appropriate order follows.

### ORDER

And now, September 29, 2004, after consideration of the defendant's motion for post-trial relief, his supporting brief, the plaintiffs' response and supporting brief, and oral argument, it is hereby ordered and decreed that the motion for post-trial relief is denied for the reasons set forth in the accompanying memorandum.